UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

DANIEL BROWN,

    Defendant.

Case No. 3:23-cr-73

District Judge Michael J. Newman

---

**ORDER: (1) SUSTAINING DEFENDANT'S FIRST OBJECTION TO THE PSR; (2) OVERRULING DEFENDANT'S SECOND OBJECTION TO THE PSR; AND (3) DIRECTING THE PROBATION OFFICE TO PROMPTLY AMEND AND FILE DEFENDANT'S PSR**

---

Previously in this felony criminal case, Defendant Daniel Brown and the Government entered into a plea agreement pursuant to which Defendant pled guilty to one count of possession with intent to distribute Fentanyl, a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  Doc. Nos. 34, 36, 38.  The indictment did not charge Defendant with a firearm-related offense.  *See* Doc. No. 1.  The Probation Officer has submitted her final Presentence Investigation Report ("PSR"), and the case is set for a sentencing hearing on October 20, 2025.

Defendant raises two objections to the PSR application of the U.S. Sentencing Guidelines ("Guidelines" or "USSG").  First, he objects to the PSR's two-point enhancement to his offense level based on the firearms that law enforcement officers found in his residence.  Doc. No. 45 at PageID 154.  Second, he objects to the PSR's inclusion of minor misdemeanor charges in calculating his criminal history points.  *Id*. at 155.  The Government and Probation have responded to both objections.  *Id*. at PageID 154-56.  In addition, Defendant and the Government have filed sentencing memoranda in which they address Defendant's two objections.  Doc. Nos. 48, 49, 50.

On August 8, 2025, the Court held an in-court hearing concerning Defendant's objections during which counsel for both parties presented oral argument; neither the Government nor Defendant offered evidence to support their factual assertions.

### I. The Plea Agreement

The parties entered into the plea agreement under Fed. R. Crim. P. 11(c)(1)(A). Doc. No. 34 at PageID 84. In the statement of facts attached to the plea agreement, Defendant stipulated and agreed, in part, to the following:

> On February 15, 2022, the Dayton Police Department Narcotics Unit executed a court authorized search at 1311 Alcott Avenue, Dayton, Ohio. At the time of the Court authorized search, the residence was owned by [Defendant]. During the search, detectives seized a kilogram press from the garage, 77 grams of fentanyl from a coffee maker in the kitchen, and drug packaging and processing equipment in the kitchen. Receipts and documents with [Defendant's] name were on the kitchen counter…
>
> [Defendant] now fully admits that, on February 15, 2022, in the Southern District of Ohio, he knowingly possessed fentanyl and he intended to distribute that fentanyl to others.

Doc. No. 34 at PageID 89. The statement of facts does not mention that law enforcement officers found firearms during the search of the Alcott Avenue residence. *See id*.

The PSR identifies three firearms found during the search of the Alcott Avenue residence, as discussed next. Doc. No. 45 at PageID 135-36, ¶ 22.

### II. The PSR

Applying the Guidelines, the PSR places Defendant's total offense level at 25 and his criminal history category at II, resulting in a recommended sentencing range of 63 to 78 months. Doc. No. 45 at PageID 150. The PSR includes a two-point increase in Defendant's base offense level under Guidelines § 2D1.1(b)(1) because officers found three firearms during the search of the Alcott Avenue residence, including an FN 9mm handgun, a Smith and Wesson .40 caliber

2

handgun with a loaded 13 round magazine found next to it, and a Maverick Arms 12 gauge shotgun loaded with 6 shotgun shells. *See id*. at PageID 135, ¶ 21.

The PSR also documents Defendant had a total criminal history score of 3 based on 3 convictions for minor misdemeanors. *Id*. at ¶s 35-37, 39. Two of Defendant's minor misdemeanor convictions were for possession of less than 100 grams of marijuana; the third conviction was for drug abuse involving less than 100 grams. *Id*.

### III. Applicable Legal Standards

This Court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing[.]" Fed. R. Crim. P. 32(i)(3)(B). "As a threshold matter, the defendant must actively raise the dispute during the sentencing hearing before the district court's duty to find facts arises." *United States v. White*, 492 F.3d 380, 415 (6th Cir. 2007). Once a defendant meets this threshold, "the 'court may not merely summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence.'" *Id*. (quoting *United States v. Solorio*, 337 F.3d 580, 598 (6th Cir. 2003)). Literal compliance with this Rule is required "'for a variety of reasons, such as enhancing the accuracy of the sentence and the clarity of the record.'" *Id*. (quoting *United States v. Treadway*, 328 F.3d 878, 886 (6th Cir. 2003)).

"Generally, factual findings relevant to sentencing must be supported only by a preponderance of the evidence." *United States v. Hurst*, 228 F.3d 751, 761 (6th Cir. 2000) (citing *United States v. Zajac*, 62 F.3d 145, 148 (6th Cir. 1995)); *see United States v. McReynolds*, 964 F.3d 555, 565 (6th Cir. 2020) ("all facts used against a defendant at sentencing must be supported by a preponderance of the evidence[.]"); *see also United States v. Gates*, 461 F.3d 703, 708 (6th

3

Cir. 2006) ("judicial fact-finding for sentencing purposes must continue as it was conducted prior to *Booker*, under a preponderance of the evidence standard." (citing *United States v. Coffee*, 434 F.3d 887, 897-98 (6th Cir. 2006))).

### IV. Analysis

#### A. Defendant's First Objection

Defendant first objects to the inclusion of "firearms" in paragraph 21 of the PSR's computation of his offense level. Doc. No. 45 at PageID 154. Defendant emphasizes that the word "firearm" is not included in the plea agreement's statement of facts, and "the fact that three guns were found during the execution of a search warrant should not be held against him. He was not present during the search nor was he arrested with any handguns on his person." Doc. No. 49 at PageID 165. Defendant also argues: (1) the firearms were found in a place occupied by several persons other than Defendant and, consequently, the firearms can be attributed to someone other than Defendant; (2) police saw other people coming and going from the residence "and it is well within the reason of probability that the weapons were the property of someone else"; and (3) "[i]t cannot be factually sustained that the weapons recovered were that of the Defendant[.]" *Id*.

The Government contends that omission of a mention of firearms in the statement of facts does not negate the fact that officers seized three firearms when officers searched his Alcott Avenue home on February 15, 2022. Doc. No. 45 at PageID 154; Doc. No. 48 at PageID 159-60; Soc. No. 50 at PageID 169-71.

Because Defendant pled guilty to a drug-trafficking crime, the Guidelines increase his offense level by two points "[i]f a dangerous weapon (including a firearm) was possessed." USSG at § 2D1.1(b)(1). A burden-shifting framework determines whether this enhancement applies. *United States v. Kennedy*, 65 F.4th 314, 318 (6th Cir. 2023).

Initially, the Government bears the burden to establish, by a preponderance of the

4

evidence—"'(1) the defendant actually or constructively "possessed" the weapon, and (2) such possession was during the commission of the offense[.]'" *Id*. (quoting *United States v. Catalan*, 499 F.3d 604, 606 (6th Cir. 2007)). "'Actual possession means that the possessor had physical control over the weapon, whereas constructive possession exists when a person ... knowingly has the power and the intention ... to exercise dominion and control over an object, either directly or through others.'" *United States v. Kunkel*, No. 24-5764, 2025 WL 1591735, at *2 (6th Cir. June 5, 2025) (quoting *United States v. Gardner*, 488 F.3d 700, 713 (6th Cir. 2007)).

If the Government makes this initial showing, "the burden shifts to the defendant to show that it was 'clearly improbable' that the weapon was connected to the offense." *Id*. (quoting *Catalan*, 499 F.3d at 606). If the defendant does not meet this burden, this Court "should apply the enhancement." *Id*. at 606-07 (citing *United States v. Shults*, 68 Fed. App'x 648, 653 (6th Cir. 2003)). The following factors may be considered:

> (1) the type of firearm involved; (2) the accessibility of the weapon to the defendant; (3) the presence of ammunition; (4) the proximity of the weapon to illicit drugs, proceeds, or paraphernalia; (5) the defendant's evidence concerning the use of the weapon; and (6) whether the defendant was actually engaged in drug-trafficking, rather than mere manufacturing or possession.

*Id*.

The Government has not met its burden to establish by a preponderance of the evidence that Defendant actually or constructively possessed the firearms found in his residence by law enforcement officers during their search on February 15, 2022. The Government does not attempt to show Defendant actually possessed the firearms. *See* Doc. No. 50 at PageID 170-72. In its effort to shown constructive possession, the Government has neglected to submit evidence in support of its sentencing memoranda and did not offer supporting evidence during the hearing on Defendant's objections. The need for such evidence is readily apparent given the Government's

5

burden to show constructive possession by a preponderance of evidence.[1] *Cf. Kennedy*, 65 F.4th at 318 ("To support the [firearm] enhancement here, the government included several exhibits with its sentencing memorandum.  Five exhibits consisted of text messages sent or received by [the defendant]").  *See id*.

The absence of such evidence leaves the Government with the following undisputed facts established during Defendant's plea hearing and in the statement of facts attached to the parties' plea agreement:  He owned the owned the residence at 1311 Alcott Avenue (Doc. No. 50 at PageID 171); during the warrant-supported search of the Alcott Avenue residence on February 15, 2022, officers found 77 grams of Fentanyl in the kitchen along with drug packaging and processing equipment, and receipts and documents with Defendant's name; Defendant's DNA was later found revealed on the baggie containing the 77 grams of Fentanyl; Defendant maintained the residence at 1311 Alcott Avenue for the purpose of manufacturing or distributing a controlled substance during the drug trafficking offense; and, on February 15, 2022, Defendant knowingly possessed Fentanyl, and he intended to distribute that Fentanyl to others.  Doc. No. 34 at PageID 89.  The PSR, the AUSA, and Defendant's counsel acknowledge that three firearms were found during the search of the Alcott Avenue residence on February 15, 2022.  Doc. No. 45 at PageID 135, ¶ 21; Doc. No. 48 at PageID 161; Doc. No. 49 at PageID 165; Doc. No. 50 at PageID 171.

The problem the Government has not overcome is that Defendant was not present during the search of the Alcott Avenue resident on February 15, 2022 and was later arrested out-of-state in North Carolina.  Doc. No. 45 at PageID 129, 133.  The Government has not presented evidence indicating that Defendant was present or living at the Alcott Avenue residence on or near the date

---

[1] The Government seems to acknowledge the need for evidence by indicating, "The Government has shown and will present evidence to show that [Defendant] constructively possessed the firearms."  Doc. No. 150 at PageID 171.

6

it was searched on February 15, 2022. The Government does not allege, or present evidence showing, that officers observed Defendant visiting the Alcott Avenue residence on at least one occasion in the days (or months) leading up to the search. Further, the PSR discloses there was a male at the Alcott Avenue residence when it was searched on February 15, 2022. Doc. No. 45 at PageID 133-34. Although this person denied knowing about the drugs or firearms officers found during the search, *id*., his presence shows that at least one person, other than Defendant, had access to the Alcott Avenue residence during a time when he was not physically present there. *See id*. Without evidence showing Defendant visited or lived in the residence at or near the date of the search, the presence of at least one other person when officers found the firearms creates a need for the Government to produce some additional evidence, which it has not done, showing Defendant knowingly had the power and intention to exercise dominion and control over the firearms. *See Kunkel*, 2025 WL 1591735, at *2; *see also Gardner*, 488 F.3d at 713.

Additional evidence in support of constructive possession is also needed because this is a single-defendant case in which Defendant pled guilty to possession of Fentanyl with intent to distribute. Doc. Nos. 1, 36, 40. Defendant did not plead guilty to being involved in a conspiracy to traffic narcotics out of the Alcott Avenue residence. *See id*. Consequently, this is not a case where possession of a firearm by a coconsipirator might be attributed to Defendant. *Cf. United States v. Catalan*, 499 F.3d 604, 607 (6th Cir. 2007) (quoting *United States v. Cochran,* 14 F.3d 1128, 1132 (6th Cir.1994) (A conspiracy case explaining, "We have explicitly rejected 'the fiction that a firearm's presence always will be foreseeable to persons participating in illegal drug transactions'").

The Government points to additional facts concerning the search of the Alcott Avenue residence: "One of firearms was found in [Defendant's] master bedroom in plain view on top of a

dresser; this room also had possessory items containing [Defendant's] name on [them]. The second firearm was found in a second bedroom. In that bedroom, possessory items in [Defendant's] name were found by law enforcement as well." Doc. No. 50 at 171. However, the Government does not support these factual assertions with citations to evidence or by offering the possessory items with Defendant's name, or other possible supporting evidence, into the record.

For the above reasons, the Government has not demonstrated by a preponderance of the evidence that Defendant actually or constructively possessed the firearms found in the search of the Alcott Avenue residence on February 15, 2022. Therefore, Defendant's first objection to the PSR is **SUSTAINED**.

### B. Defendant's Second Objection

Defendant also objects to a three-point increase in his criminal history calculation based on three minor misdemeanor convictions. Doc. No. 45 at PageID 155; Doc. No. 49. He contends, "Minor misdemeanors are not criminal convictions under Ohio law." *Id*. This contention lacks merit.

The Guidelines exclude from a defendant's criminal history calculation certain "prior offenses and offenses similar to them[,]" including, for example, fish and game violations, hitchhiking, minor traffic infractions, and vagrancy. USSG § 4A1.2(c)(2). In a prior criminal case, this Court adhered to the Sixth Circuit's holding "that minor misdemeanor marijuana possession convictions under Ohio Rev. Code § 2925.11—even though they only impose a fine—do not fall under the two categories listed in § 4A1.2(c)." *United States v. Hargrove*, 645 F.Supp. 3d 840, 844 (S.D. Ohio 2022) (citing *United States v. Stubblefield*, 265 F.3d 345, 347 (6th Cir. 2001) (noting, "the exceptions set forth in § 4A1.2(c) do not apply" to Ohio Rev. Code § 2925.11 convictions)). Defendant has not cited to any contrary case law. *See* Doc. No. 45 at PageID 154; Doc. No. 49 at PageID 165. Similarly, Defendant's minor misdemeanor conviction—for drug

8

abuse involving less than 100 grams—is not one of the excluded minor misdemeanor offenses, or a similar offense, listed in USSG § 4A1.2(c)(2). Defendant has not cited any case law to justify excluding from his criminal history calculation his minor misdemeanor conviction for drug abuse involving less than 100 grams. *See id*.

Defendant notes that the Probation Officer wrote, "a downward departure for overrepresentation of criminal history under USSG § 4A1.3(b)(1) may be warranted." Doc. No. 49 at PageID 156. The standard applicable to determining whether a defendant's criminal history category overrepresents the seriousness of his "actual criminal history," *United States v. Smith*, 278 F.3d 605, 611 (6th Cir. 2002), hinges on the existence of "reliable information": "If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." USSG § 4A1.3(b)(1). This Court has "the discretion to determine that a defendant's criminal history category may overstate his actual criminal history[.]" *Smith*, 278 F.3d at 611. "In making this determination, the district court can consider the types of prior convictions, the age of the convictions, and signs of rehabilitation." *United States v. Orozco-Torres*, 318 Fed. App'x 328, 336 (6th Cir. 2008) (citing *United States v. Fletcher,* 15 F.3d 553, 557 (6th Cir. 1994)).

Although Defendant's criminal history does not include any felony convictions or crimes of violence, the inclusion of his three prior misdemeanor charges does not "substantially" overrepresent the seriousness of his criminal history. Because Defendant's prior charges were connected to possession of marijuana or drug abuse, each was unlike the minor misdemeanors that are specifically excluded from the criminal history calculation under the Guidelines § 4A1.2(c)(2). Moreover, Defendant has not pointed to reliable information demonstrating he successfully

9

completed a narcotics-rehabilitation program.

Accordingly, the Court **OVERRULES** Defendant's second objection to the PSR. This ruling does not preclude Defendant from seeking a variance or otherwise raising arguments related to his prior minor misdemeanor convictions under 18 U.S.C. § 3553(a) during his sentencing hearing.

## V.  CONCLUSION

Defendant's first objection to the PSR is **SUSTAINED**. Consequently, the PSR incorrectly includes a two-point increase in Defendant's base offense level due to the firearms found in his home. Without this two-point increase, Defendant's total offense level is 23.

Defendant's second objection to the PSR is **OVERRULED**, and his criminal history remains Category II.

Defendant's total offense level of 23 together with Category II criminal history places his recommended sentencing range under the Guidelines at 51 to 63 months. Doc. No. 45 at PageID 155.

The Probation Office is **DIRECTED** to promptly amend and file Defendant's PSR.

**IT IS SO ORDERED.**

October 17, 2025                               s/*Michael J. Newman*
                                               Hon. Michael J. Newman
                                               United States District Judge